IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**NORFOLK SOUTHERN RAILWAY COMPANY,**

    **Plaintiff,**

v.                                              Civil Action No._24-506_____

**CARLTON BATES COMPANY and WESCO
DISTRIBUTION, INC.**

    **Defendants**

## COMPLAINT

The Plaintiff, Norfolk Southern Railway Company ("NSRC"), by counsel, for its Complaint against Defendants Carlton Bates Company and WESCO Distribution, Inc., states as follows:

## PARTIES

1. Plaintiff NSRC is a Virginia corporation having its principal place of business in Atlanta, Georgia.

2. Defendant Carlton Bates Company ("CBC" or "Carlton Bates"), on information and belief, is an Arkansas corporation having its principal place of business in Little Rock, Arkansas. CBC is a wholly owned subsidiary of Defendant WESCO Distribution, Inc.

3. Defendant WESCO Distribution, Inc. ("WESCO"), on information and belief, is a Delaware corporation having its principal place of business in Pennsylvania. In or about 2017, WESCO acquired CBC, and continued doing business as CBC. By virtue of its acquisition of CBC, and continuing to do business by or through CBC, WESCO is liable to NSRC for the matters set forth herein to the same extent, and on the same basis as, CBC.

4. At all relevant times hereto, NSRC was engaged in the business of transporting goods and commodities by rail in Virginia, West Virginia, and other states.

5. At all relevant times hereto, CBC and WESCO were in the business of, among other things, supplying industrial parts to NSRC for NSRC's use in the rail industry, including but not limited to parts used by NSRC in the repair and maintenance of on-track maintenance equipment.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because the parties are completely diverse and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

7. In 2018, Carlton Bates sold one or more "Travel Double Foot Switches" ("Travel Pedal") to NSRC. The Travel Pedals were sold to NSRC pursuant to Purchase Orders issued to Carlton Bates for such Travel Pedals. The Travel Pedal at issue in this case was sold and provided to NSRC pursuant to Purchase Order No. 4550962811 issued to Carlton Bates on May 2, 2018, or Purchase Order No. 4551014585 issued to Carlton Bates on September 12, 2018. Copies of the Purchase Orders are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

8. The Purchase Orders, at ¶ 19, provide that both NSRC and Carlton Bates each:

> (ii) consents to submit itself to the personal jurisdiction of . . . the U.S. District Court for the Eastern District of Virginia (and appellate courts from any of the foregoing) (the "Chosen Courts") . . . in the event any dispute arises out of this Order or the transactions contemplated by this Order, (iii) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any Chosen Court and (iv) agrees that any action relating to this Order or the transactions contemplated by this Order shall be brought exclusively in the Chosen Courts.

9. This action involves disputes arising out of, or relating to, a transaction contemplated by the Purchase Orders, specifically the sale of the Travel Pedal pursuant to the Purchase Orders.

10. This Court has personal jurisdiction over Carlton Bates and WESCO because they have expressly consented to such jurisdiction pursuant to ¶ 19 of the Purchase Orders.

11. Venue is proper in this Court because Carlton Bates and WESCO have consented to this Court as the proper venue for all disputes arising out of, or relating to, the Purchase Orders pursuant to ¶ 19 of the Purchase Orders.

12. The Purchase Orders further provide that:

EACH PARTY HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM WHETHER BASED ON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS ORDER OR THE ACTIONS OF ANY PARTY IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE AND ENFORCEMENT HEREOF.

## FACTUAL BACKGROUND

### A.  NSRC's use of the Travel Double Foot Switch

13. In or about September of 2019, NSRC began preparing a piece of its on-track maintenance equipment known as an anchor-adjuster for use on a newly established tie and surfacing (T&S) gang to be known as T&S 32. The anchor-adjuster was designated as AAM-11. Prior to that time, AAM-11 had been in storage at NSRC's on-track equipment facility in Irondale, Alabama.

14. An anchor-squeezer is used in connection with NSRC's maintenance of its railroad track to adjust and apply rail anchors. As part of its ongoing maintenance of its track and roadbed, NSRC uses T&S gangs to, *inter alia*, replace damaged or worn railroad ties and groom the ballast rock in and around the track so that it properly supports the track, transmits, and distributes the load of rail cars using the track, provides adequate drainage for the track, and maintains proper track cross level, surface, and alinement.

15. To prepare the AAM-11 for use on T&S 32, NSRC replaced the Travel Pedal on the AAM-11 with a new Travel Pedal purchased from Carlton Bates and WESCO pursuant to the Purchase Orders.

16. Once installed on the AAM-11, the Travel Pedal controlled the movement of the AAM-11 as it was being used on NSRC track. When the AAM-11 operator was operating the machine in "work-mode," the Travel Pedal on the AAM-11 served as both an accelerator and a brake pedal.

17. When the Travel Pedal was released, the Travel Pedal released the AAM-11's service brake and applied power to its drive or travel mechanism allowing the AAM-11 to move along the rail. When the Travel Pedal was applied, the Travel Pedal applied the AAM-11's service brake and removed power from its drive or travel mechanism causing the AAM-11 to stop.

18. The AAM-11 was placed into service on T&S 32 in or about January of 2019. The AAM-11 was used by NSRC employees on a weekly basis through the date of the incident at issue in this case on August 28, 2019 ("the Incident").

19. After the Travel Pedal was installed on the AAM-11 in September of 2018, all necessary maintenance and inspections of the AAM-11 and its component parts, including the Travel Pedal, were performed by NSRC employees.

**B.     The August 28, 2019 Incident**

20. On August 28, 2019, at the time of the Incident, T&S 32 was working in NSRC's Flat Top Yard near Nemours, West Virginia.

21. On the day of the Incident, NSRC employee Lorenzo Walters was one of three employees operating another piece of track maintenance equipment on T&S 32 known as a gauger-spiker. The gauger-spiker was designated as GS-10201. A gauger-spiker is also used in

connection with NSRC's maintenance of its railroad track to set rails at the correct gauge and to spike the rail tie plates and ties once the gauge is set and confirmed.

22. The machine immediately behind GS-10201 at the time of the Incident was the AAM-11, operated by NSRC employee Marcus Sims.

23. Sims moved the AAM-11 for some distance to the next work location where rail anchors were to be applied. As he approached his next work location, Sims depressed the Travel Pedal to stop the AAM-11. However, the AAM-11 continued moving forward as if the Travel Pedal had not been applied. Sims was unable to stop the AAM-11, and it collided with the GS-10201.

24. At the time of the collision, Lorenzo Walters was seated in the front of the GS-10201 in the Spike Feeder's seat.

25. Walters claimed that he was injured as a result of the collision.

26. NSRC's investigation into the Incident determined that the collision was caused by a defect in the Travel Pedal. Specifically, the micro-switch in the Travel Pedal was defective and failed. As a result of the failure, the Travel Pedal continued supplying tractive power to the AAM-11 and did not activate the braking mechanism when Sims applied the Travel Pedal.

    C.    **Walters' Lawsuit Against NSRC**

27. On or about January 8, 2020, Walters filed a lawsuit against NSRC in the United States District Court for the Southern District of West Virginia at Bluefield, Civil Action No. 1:20-cv-00017, under the Federal Employers' Liability Act, 45 U.S.C. §51 et seq. ("FELA"), alleging that he was injured as a result of the Incident (the "Walters Civil Action").

28. In the Walters Civil Action, Walters claimed, *inter alia*, that the Incident that caused his injuries was caused by Sims' alleged negligence in operating the AAM-11.

Specifically, Walters claimed that Sims was negligent in causing or allowing the AAM-11 to rear-end the GS-10201. Under the FELA, Walters also alleged that NSRC was liable for Sims' alleged negligence in operating the AAM-11.

29. NSRC denied that it was negligent as Walters alleged.

30. As a result of the Incident, Walters claimed that he sustained serious and permanent injuries that precluded him from returning to employment with NSRC. Walters sought significant damages from NSRC as a result of his alleged injuries, and claimed that he was disabled from, or limited with respect to, future employment.

31. On September 7, 2021, Walters and NSRC attended a mediation of the Walters Civil Action in Charleston, West Virginia. At the mediation, the parties reached an agreement whereby Walters agreed to a full and complete release of any claims that he might have against NSRC, Carlton Bates and/or WESCO with respect to the Incident and/or the Walters Civil Action in exchange for payment by NSRC of a confidential amount of money. Walters executed a Settlement Agreement effectuating the settlement on or about September 13, 2021, and the Walters Civil Action was dismissed with prejudice by Order dated October 26, 2021.

32. The amount paid by NSRC to resolve the Walters Civil Action pursuant to the Settlement Agreement exceeded $ 75,000.00, exclusive of interest and costs.

### COUNT I – Express Indemnity/Breach of Contract

33. NSRC reincorporates and realleges the allegations asserted in paragraphs 1 through 32 of this Complaint as if they were fully asserted herein.

34. The Travel Pedal was sold to NSRC pursuant to the terms of the Purchase Orders. By accepting NSRC's order, and by selling the Travel Pedal to NSRC pursuant to the express terms of the Purchase Orders, Carlton Bates and WESCO are bound by the terms of the Purchase

Orders, including but not limited to the Terms and Conditions that were an express part of the Purchase Orders.

35. In the Purchase Orders, Carlton Bates and WESCO agreed to indemnify NSRC with respect to products purchased by NSRC under the Purchase Orders. Specifically, Carlton Bates and WESCO agreed that:

> **12. INDEMNITY**. (a) [Carlton Bates/WESCO] shall indemnify and hold harmless [NSRC], all corporate affiliates and subsidiaries of Norfolk Southern, and all officers, employees and agents of all such companies (collectively, the "Indemnified Parties") from and against any and all liability, demands, claims, losses, costs and expenses (including, but not limited to, litigation costs, investigation costs, reasonable attorney's fees, environmental clean-up costs and, in the case of subparagraph (iii) below, royalty payments), fines and penalties arising from or in connection with (i) any alleged loss of life or personal injury to any officer, employee, subcontractor or agent of Seller or loss or damage to the property of Seller, its officers, employees, subcontractors or agents arising from, incident to or occurring in connection with the performance of this Purchase Order or the presence of Seller, its officers, employees, subcontractors or agents upon or about the property or premises of Buyer unless such loss of life, personal injury or property loss or damage was caused solely by the negligence of Buyer; provided, however, that if, under the law applicable to enforcement of this Contract, an agreement to indemnify against the indemnified party's own negligence is invalid, then in that event Seller's obligation to indemnify the Indemnified Parties under this Section shall be reduced in proportion to the negligence of Buyer, if any, that proximately contributed to such loss of life, personal injury or property loss or damage; (ii) except with respect to persons and property covered by subsection (a) (i) above, any alleged loss of life or personal injury to any person or the loss of or damage to any property (x) arising from, incident to or in connection with the negligent acts or omissions or willful misconduct of Seller, its officers, employees, subcontractors or agents, except to the extent that the personal injury or death or property loss or damage was caused by the negligence or willful misconduct of Buyer or (y) to the extent caused by a defect in any Product purchased hereunder; (iii) any alleged infringement of intellectual property rights arising from Buyer's use of the Product; and (iv) any alleged violation of any law, statute, code, ordinance or regulation of the United States or any other country, or of any state, county, municipal government, or other political subdivision of the United States or any other country (including, without limitation, those relating to air, water, noise, solid waste and other forms of environmental protection, contamination or pollution or to discrimination on any basis) that results in whole or in part, directly or

indirectly, from the activities of Seller or its officers, employees, agents or subcontractors related in any way to this Contract or from any other act or omission of Seller, its officers, employees, agents, or subcontractors contributing to such violation, regardless of whether such activities, acts or omissions are intentional or negligent, and regardless of any specification by Buyer without actual knowledge that it might violate any such law, statute, code, ordinance or regulation.

36. The indemnity obligations assumed by Carlton Bates and WESCO in the Purchase Orders are valid and fully enforceable by NSRC against Carlton Bates and WESCO with respect to the allegations made against NSRC in the Walters Civil Action.

37. Under the terms of ¶ 12 of the Purchase Orders, Carlton Bates and WESCO were, and are, required to fully indemnify NSRC with respect to the amounts paid to settle the Walters Civil Action and its attorneys' fees and costs incurred in defending the Walters Civil Action.

38. The Incident that gave rise to the Walters Civil Action was caused by a defect in a product purchased by NSRC under the Purchase Orders. Specifically, the Travel Pedal and the incorporated micro-switch were defective.

39. At the time of the Incident and prior thereto, he Travel Pedal and the micro-switch were being used by NSRC as intended in accordance with all applicable guidelines and specifications. Given the application in which the Travel Pedal and the micro-switch were used on the AAM-11, the Travel Pedal and the micro-switch should not have failed under the circumstances and within the time frame of the Incident.

40. NSRC's post-incident investigation determined that the Travel Pedal and the micro-switch were defective, and that the defect caused the Incident.

41. In December of 2020, the micro-switch that was incorporated in the Travel Pedal was tested at NTS Laboratory in Belcamp, Maryland. Carlton Bates and WESCO were given

notice of the proposed testing and agreed to the testing protocol. Carlton Bates and WESCO were represented by legal and/or technical representatives at the December 2020 testing.

42. The December 2020 testing confirmed that the micro-switch that was incorporated into the Travel Pedal at the time it was purchased from Carlton Bates and WESCO, and remained in the Travel Pedal at the time of the Incident, was defective.

43. The events and circumstances that formed the basis of Walters' allegations that NSRC violated the FELA on the date of the Incident resulted in whole or in part, directly or indirectly, from NSRC's purchase of the Travel Pedal from Carlton Bates and WESCO pursuant to the Purchase Orders.

44. After being served with the Walters Civil Action, NSRC notified Carlton Bates and WESCO of Walters' claim and demanded that Carlton Bates and WESCO defend and indemnify NSRC pursuant to the indemnity obligations contained in the Purchase Orders.

45. Prior to the mediation in September of 2021, NSRC notified Carlton Bates and WESCO of the mediation, invited them to attend the mediation and reiterated their demand for defense and indemnity with respect to the Walters Civil Action pursuant to the indemnity obligations contained in the Purchase Orders.

46. Under the terms of the Purchase Orders, Carlton Bates and WESCO were, and are, contractually obligated to indemnify and save NSRC harmless for all costs incurred in connection with the Walters Civil Action, including but not limited to the amounts that NSRC paid Walters by virtue of the good faith settlement that was reached at the mediation, and for any and all attorneys' fees and costs incurred in connection with the Walters Civil Action.

47. Despite NSRC's demand to Carlton Bates and WESCO that they fully defend and indemnify NSRC with respect to the Graham Civil Action, Carlton Bates and WESCO have failed and refused to do so.

48. Carlton Bates and WESCO have therefore breached their indemnity obligations under the Purchase Orders to NSRC.

49. As a direct and proximate result of Carlton Bates and WESCO's breach of their obligations, NSRC has incurred significant legal fees, expenses, costs, and losses as a result of the Walters Civil Action.

50. Based upon the foregoing, NSRC is entitled to the following relief from Carlton Bates and WESCO:

   a. Judgment in its favor that Carlton Bates and WESCO are required to indemnify and save harmless NSRC with respect to all costs and expenses incurred in the Walters Civil Action;

   b. Judgment in its favor that Carlton Bates and WESCO have breached their contractual obligation to indemnify and save harmless NSRC with respect to the Walters Civil Action;

   c. An award of damages in against Carlton Bates and WESCO for all amounts paid in good faith to settle the Walters Civil Action;

   d. An award of damages in against Carlton Bates and WESCO for all attorneys' fees and costs, including experts witness fees and costs, reasonably incurred in defending the Walters Civil Action;

   e. An award of damages in against Carlton Bates and WESCO for all attorneys' fees and costs, including experts witness fees and costs, reasonably incurred in pursuing indemnity from Carlton Bates and WESCO;

   f. An award of pre- and post-judgment interest; and

   g. Any other relief that this Court deems just and appropriate.

WHEREFORE, Plaintiff NSRC respectfully requests that this Court enter Judgment in its favor and against Defendants Carlton Bates and WESCO for the damages and other relief sought herein, along with such other and further relief as this Court may deem just and proper.

**TO BE TRIED BY THE COURT WITHOUT A JURY**

                **NORFOLK SOUTHERN RAILWAY COMPANY**

                By    /s/ David C. Bowen
                                 Of Counsel

David C. Bowen
(VSB No. 26771)
Forrest M. Via
(VSB No. 98853)
Willcox & Savage, P.C.
440 Monticello Avenue, Suite 2200
Norfolk, Virginia 23510
Telephone: (757) 628-5500
Facsimile: (757) 628-5566
dbowen@wilsav.com
fvia@wilsav.com

John H. Mahaney
(pro hac vice motion to be submitted)
Dinsmore & Shohl LLP
611 Third Avenue
Huntington, West Virginia 25701
Telephone: (304) 691-8320
Facsimile: (304) 522-4312
john.mahaney@dinsmore.com

*Counsel for the Plaintiff,*
*Norfolk Southern Railway Company*

I-2799856.1